UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| NEVA LORRAINE MOYA,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>MICHAEL J. ASTRUE,<br>Commissioner of Social Security,<br><br>　　　　　Defendant. | Case No. EDCV 10-01584-JEM<br><br>MEMORANDUM OPINION AND ORDER REVERSING DECISION OF THE COMMISSIONER OF SOCIAL SECURITY AND REMANDING FOR FURTHER PROCEEDINGS |

**PROCEEDINGS**

On October 15, 2010, Neva Lorraine Moya ("Plaintiff" or "Claimant" or "Moya") filed a complaint seeking review of the decision by the Commissioner of the Social Security Administration ("Commissioner") denying Plaintiff's application for Social Security Disability and Disability Insurance benefits. The Commissioner filed an Answer to the Complaint on April 13, 2011. On August 3, 2011, the parties filed a Joint Stipulation ("JS").

Pursuant to 28 U.S.C. § 636(c), both parties consented to proceed before the undersigned Magistrate Judge. After reviewing the pleadings, transcripts, and administrative record ("AR"), the Court concludes that the Commissioner's decision should be reversed and remanded for further proceedings in accordance with this Memorandum Opinion and Order and with law.

**BACKGROUND**

Plaintiff Neva Lorraine Moya is a 50 year old female who filed an application for Social Security Disability Insurance benefits on October 11, 2007, alleging disability beginning May 1, 2006. (AR 12.) Plaintiff has not engaged in substantial gainful activity since that date. (AR 15.)

Plaintiff's claim was denied initially on December 17, 2007, and on reconsideration on February 29, 2008. (AR 12.) Plaintiff filed a timely request for a hearing, which was held on July 6, 2009, in San Bernardino, California, before Administrative Law Judge ("ALJ") Mason D. Harrell, Jr. (AR 34-63.) Plaintiff appeared and testified at the hearing. (AR 12.) Vocational expert ("VE") Sandra M. Fioretti and medical expert David Glassmire also appeared at the hearing. (AR 12.) Claimant was represented by counsel. (AR 12.)

The ALJ issued a partially favorable decision on November 4, 2009, finding that Plaintiff was disabled and entitled to Social Security Disability benefits between May 1, 2006, and ending on December 1, 2007 but not thereafter, because of medical improvement. (AR 12-21.) The Appeals Council denied Plaintiff's request for review on August 18, 2010. (AR 1-3.)

**DISPUTED ISSUES**

As reflected in the Joint Stipulation, the issues Plaintiff raises as grounds for reversal and remand are as follows:

1. Whether the ALJ has properly considered the relevant medical evidence of record in this case.
2. Whether the ALJ has properly considered Plaintiff's subjective complaints and properly assessed Plaintiff's credibility.
3. Whether the ALJ properly considered and assessed the vocational issues in this case including Plaintiff's past relevant work.

## STANDARD OF REVIEW

Under 42 U.S.C. § 405(g), this Court reviews the ALJ's decision to determine whether the ALJ's findings are supported by substantial evidence and free of legal error. Smolen v. Chater, 80 F.3d 1273, 1279 (9th Cir. 1996); see also DeLorme v. Sullivan, 924 F.2d 841, 846 (9th Cir. 1991) (ALJ's disability determination must be supported by substantial evidence and based on the proper legal standards).

Substantial evidence means "'more than a mere scintilla,' but less than a preponderance." Saelee v. Chater, 94 F.3d 520, 521-22 (9th Cir. 1996) (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson, 402 U.S. at 401 (internal quotation marks and citation omitted).

This Court must review the record as a whole and consider adverse as well as supporting evidence. Robbins v. Soc. Sec. Admin., 466 F.3d 880, 882 (9th Cir. 2006). Where evidence is susceptible to more than one rational interpretation, the ALJ's decision must be upheld. Morgan v. Comm'r of the Soc. Sec. Admin., 169 F.3d 595, 599 (9th Cir. 1999). "However, a reviewing court must consider the entire record as a whole and may not affirm simply by isolating a 'specific quantum of supporting evidence.'" Robbins, 466 F.3d at 882 (quoting Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989)); see also Orn v. Astrue, 495 F.3d 625, 630 (9th Cir. 2007).

## THE SEQUENTIAL EVALUATION

The Social Security Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or . . . can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d) (1)(A), 1382c(a)(3)(A). The Commissioner has established a five-step sequential process to determine whether a claimant is disabled. 20 C.F.R. §§ 404.1520, 416.920.

The first step is to determine whether the claimant is presently engaging in substantial gainful activity. Parra v. Astrue, 481 F.3d 742, 746 (9th Cir. 2007). If the claimant is engaging in substantial gainful activity, disability benefits will be denied. Bowen v. Yuckert, 482 U.S. 137, 140 (1987). Second, the ALJ must determine whether the claimant has a severe impairment or combination of impairments. Parra, 481 F.3d at 746. An impairment is not severe if it does not significantly limit the claimant's ability to work. Smolen, 80 F.3d 1273, 1290 (9th Cir. 1996). Third, the ALJ must determine whether the impairment is listed, or equivalent to an impairment listed, in 20 C.F.R. Pt. 404, Subpt. P, Appendix I of the regulations. Parra, 481 F.3d at 746. If the impediment meets or equals one of the listed impairments, the claimant is presumptively disabled. Bowen v. Yuckert, 482 U.S. at 141. Fourth, the ALJ must determine whether the impairment prevents the claimant from doing past relevant work. Pinto v. Massanari, 249 F.3d 840, 844-45 (9th Cir. 2001).

Before making the step four determination, the ALJ first must determine the claimant's residual functional capacity ("RFC")[1]. 20 C.F.R. § 416.920(e). RFC is what one "can still do despite [his or her] limitations" and represents an assessment "based on all the relevant evidence." 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). The RFC must account for all of the claimant's impairments, including those that are not severe. 20 C.F.R. §§ 416.920(e), 416.945(a)(2); Social Security Ruling ("SSR") 96-8p.

If the claimant cannot perform his or her past relevant work or has no past relevant work, the ALJ proceeds to the fifth step and must determine whether the impairment prevents the claimant from performing any other substantial gainful activity. Moore v. Apfel, 216 F.3d 864, 869 (9th Cir. 2000). The claimant bears the burden of proving steps one through four, consistent with the general rule that at all times the burden is on the claimant to establish his or her entitlement to benefits. Parra, 481 F.3d at 746. Once this prima facie case is established by the claimant, the burden shifts to the Commissioner to show that the

---

[1] Residual functional capacity ("RFC") is what one "can still do despite [his or her] limitations" and represents an assessment "based on all the relevant evidence." 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1).

4

claimant may perform other gainful activity. Lounsburry v. Barnhart, 468 F.3d 1111, 1114 (9th Cir. 2006). If the Commissioner cannot meet this burden, then the claimant is disabled and entitled to benefits. Id.

**THE ALJ DECISION**

In this case, the ALJ determined at step one of the sequential process that Plaintiff has not engaged in substantial gainful activity since May 1, 2006, the alleged onset date. (AR 15.)

At step two, the ALJ found that Plaintiff has the medically determinable severe impairment of bipolar disorder. (AR 15.)

At step three, the ALJ determined that Plaintiff does not have an impairment that meets or medically equals one of the listed impairments. (AR 16.)

The ALJ then found that Plaintiff has the RFC to perform sedentary work on and after December 2, 2007, with the following limitations:

> The claimant can only occasionally stoop, crouch, and kneel, never climb ladders, work at heights, or balance, and requires work that involves no more than six-step instructions, has no contact with the public, and involves only occasional non-intense contact with co-workers and supervisors.

(AR 19.) In determining this RFC, the ALJ made an adverse credibility finding that Plaintiff's subjective symptoms were not credible to the extent inconsistent with the assessed RFC. (AR 20.)

At step four, the ALJ found that Plaintiff was capable of performing her past relevant work as an assembler as performed. (AR 21.) Additionally, the ALJ determined that Plaintiff could perform other jobs in the national economy such as a small product assembler and a buttons and notions assembler. (AR 21.)

Accordingly, the ALJ concluded that Plaintiff was disabled from May 1, 2006, through December 1, 2007, but that medical improvement had occurred as of December 2, 2007,

such that plaintiff was not disabled within the meaning of the Social Security Act after that date. (AR 21.)

**DISCUSSION**

The ALJ decision must be reversed. The ALJ relied heavily on the testimony of the psychiatrist medical expert who properly found evidence of medical improvement, but both the expert and the ALJ nonetheless failed to give proper attention to Plaintiff's medication side effects. Both Plaintiff and her mother credibly testified that her multiple psychiatric medications made her sleepy, affected her concentration, and made her unable to work. Having found Plaintiff disabled from May 1, 2006, to December 1, 2007, the ALJ bore the burden to establish medical improvement sufficient to enable Plaintiff to work after that date. The ALJ failed to meet his burden.

**A. The Legal Standards Regarding Medical Improvement**

An individual is "disabled" for the purpose of receiving benefits under the Act if she is unable to engage in any substantial gainful activity due to an impairment which has lasted, or is expected to last, for a continuous period of at least twelve months. 42 U.S.C. § 1382c(a)(3)(A); 20 C.F.R. § 416.905(a). "Once a claimant has been found to be disabled, . . . a presumption of continuing disability arises in her favor[, and the Commissioner] bears the burden of producing evidence sufficient to rebut this presumption of continuing disability." Bellamy v. Sec'y of Health & Human Serv., 755 F.2d 1380, 1381 (9th Cir. 1985); see also Murray v. Heckler, 722 F.2d 499, 500 (9th Cir. 1983) (disability benefits cannot be terminated without evidence of improvement which is reviewed under the substantial evidence standard).

A recipient whose condition has improved medically so that she is able to engage in substantial gainful activity is no longer disabled. 42 U.S.C. § 1382c(a)(4); 20 C.F.R § 416.994; Flaten v. Sec'y of Health & Human Servs., 44 F.3d 1453, 1459 (9th Cir. 1995). A medical improvement is:

> [A]ny decrease in the medical severity of [a recipient's] impairment(s) which was present at the time of the most recent favorable medical decision that [the recipient was] disabled or continued to be disabled. A determination that there has been a decrease in medical severity must be based on changes (improvement) in the symptoms, signs and/or laboratory findings associated with [the recipient's] impairment(s) . . . .

20 C.F.R § 416.994(b)(1)(i), (2)(i).

The ALJ applied and followed the seven-step evaluation process set forth in 20 C.F.R. § 416.994 to determine if a claimant continues to be disabled.

At step one, the ALJ must determine whether the claimant has an impairment or combination of impairments that meets or medically equals the criteria of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 416.920(d), 416.925, and 416.926). If the claimant does, her disability continues (20 C.F.R. § 416.994(b)(5)(i)).

At step two, the ALJ must determine whether medical improvement has occurred (20 C.F.R. § 416.994(b)(5)(ii)). Medical improvement is any decrease in medical severity of the impairment(s) as established by improvement in symptoms, signs, and/or laboratory findings (20 C.F.R. § 416.994(b)(1)(i)). If medical improvement has occurred, the analysis proceeds to the third step. If not, the analysis proceeds to the fourth step.

At step three, the ALJ must determine whether medical improvement is related to the ability to work (20 C.F.R. § 416.994(b)(5)(iii)). Medical improvement is related to the ability to work if it results in an increase in the claimant's capacity to perform basic work activities (20 C.F.R. § 416.994(b)(1)(iii)). If it does, the analysis proceeds to the fifth step.

At step four, the ALJ must determine if an exception to medical improvements applies (20 C.F.R. § 416.994(b)(5)(iv)). There are two groups of exceptions (20 C.F.R. § 416.994(b)(3) and (b)(4)). If one of the first group exceptions applies, the analysis proceeds to the next step. If one of the second group exceptions applies, the claimant's disability ends. If none apply, the claimant's disability continues.

7

At step five, the ALJ must determine whether all the claimant's current impairments in combination are severe (20 CFR § 416.994(b)(5)(v)). If all current impairments in combination do not significantly limit the claimant's ability to do basic work activities, the claimant is no longer disabled. If they do, the analysis proceeds to step six.

At step six, the ALJ must assess the claimant's residual functional capacity based on the current impairments and determine if she can perform past relevant work (20 CFR § 416.994(b)(5)(vi)). If the claimant has the capacity to perform past relevant work, her disability has ended. If not, the analysis proceeds to step seven.

At step seven, the ALJ must determine whether other work exists that the claimant can perform, given her residual functional capacity and considering her age, education, and past work experience (20 CFR § 416.994(b)(5)(vii)). If the claimant can perform other work, she is no longer disabled. If the claimant cannot perform other work, her disability continues. In order to support a finding that an individual is not disabled at this step, the Social Security Administration is responsible for providing evidence that demonstrates that other work exists in significant numbers in the national economy that the claimant can do, given her residual functional capacity, age, education, and work experience.

In this case, the ALJ determined that medical improvement had occurred such that Plaintiff's RFC for work activities had increased on and after December 2, 2007, and she could do her past relevant work as an assembler as performed and also other work in the national economy. (AR 20-21.)

**B.   Analysis**

It is undisputed that Plaintiff has the medically severe impairment of bipolar disorder. (AR 15.) Her psychiatric impairments were severe enough that the ALJ considered her disabled from May 1, 2006, through December 1, 2007, and entitled to disability benefits. (AR 21.) As claimant herself describes her symptoms, "I have mood swings. I have a lot of anger. I have a lot of depression and anxiety." (AR 27.) "I cry a lot." (AR 32.) Her mother testified that Plaintiff suffered extensive sexual abuse as a child. (AR 43.) Plaintiff's mother

was awarded custody of Plaintiff's child in August, 2008 because Plaintiff was neglectful of the child. (AR 41.) As for work, Plaintiff's mother testified, "She always gets fired. She argues with people, or she can't follow directions. . . She was constantly asking how to work the cash register and repetitive things that she should have caught on to, and she moved slow. She is very slow moving, and slow acting." (AR 44.) Dr. Glassmire, the medical expert, concluded that Plaintiff likely would have missed more than three days of work during the period of disability. (AR 52.) The ALJ accordingly found the occupational base of sedentary work to be eroded sufficiently that a finding of disabled was appropriate. (AR 18.)

Having found Plaintiff to be disabled from May 1, 2006, through December 1, 2007, the ALJ bears the burden of producing evidence sufficient to rebut the presumption of disability. See Bellamy, 755 F.2d at 1381; see also Murray, 722 F.2d at 500. The ALJ did cite evidence of medical improvement through the expert testimony of Dr. Glassmire, who testified at the supplemental hearing. Essentially, Dr. Glassmire, reviewing Plaintiff's treatment records, found that Claimant's symptoms had improved with medications, and that she was stable with only mild to moderate symptoms. (AR 18, 53-59.) Dr. Glassmire also found that the more restrictive RFCs of Plaintiff's treating physicians were not supported by their own treatment records (AR 55-57), an accepted basis for discounting the opinion of a treating physician. Thomas v. Barnhart, 278 F.3d 947, 957 (9th Cir. 2002) (ALJ may reject treating physician opinion inconsistent with and unsupported by his own records); Matney v. Sullivan, 981 F.2d 1016, 1020 (9th Cir. 1992) (treatment records inconsistent). There is substantial evidence to establish that some medical improvement occurred on and after December 2, 2007.

The ALJ, however, still did not meet his burden to demonstrate that Plaintiff's medical improvement was sufficient to establish that she now is capable of working. One aspect of her psychiatric condition not addressed by Dr. Glassmire or the ALJ is medication side effects. Plaintiff stated and testified repeatedly that her medications make her tired and "real sleepy" and impair her concentration. (AR 27, 178, 193, 200, 210.) Plaintiff now takes 11

pills every night for her psychiatric condition. (AR 45.) Her mother testified that these medications have the side effects of sluggishness and loss of memory. (AR 45.) Plaintiff explicitly testified she was unable to work because her medications make her "real sleepy." (AR 27.) The ALJ, however, erroneously asserts that Plaintiff's medical improvement is demonstrated by her ability to hold a part-time job. (AR 18, 20.) The job, however, in retail sales in a clothing store, only lasted three months. (AR 25-26.) The store let her go because, she said, "They said I was working too slow, and my medications made me really sleepy, so it was hard to work." (AR 26.) The ALJ opinion does not acknowledge that Plaintiff was let go from her part-time job. The Court does not understand how Plaintiff's part-time job from which she was fired after only three months because of medication side effects can demonstrate her ability to work. Plaintiff's inability to maintain the part-time job or any job because of medication side effects weighs heavily against the sufficiency of the ALJ's medical improvement finding for any full time work activity.

     To be sure, there is considerable support in the record that Plaintiff's symptoms improved after 2007. Apart from the medical expert's testimony (AR 55-57), Plaintiff's mother testified that the medications have helped: "It has controlled her up and down horrible, her current mood swings but she is still not normal." (AR 46.) She also testified Plaintiff "is not as angry, and she doesn't have the horrible roller coaster personality." (AR 49.) The notes of her treating physicians also reflect improvement, as Dr. Glassmire found.

     Medical improvement in and greater control over Plaintiff's psychiatric symptoms with medications, however, is not the same thing as medication side effects nor does it mean that Plaintiff is not impaired by her medications. She testified she cannot work because her medications make her sleepy and impair her concentration. That was why she was fired. Yet neither the ALJ nor Dr. Glassmire address the potentially disabling effects of Plaintiff's medications. The ALJ must consider all factors that might have a significant impact on an individual's ability to work, including the side effects of medications. Erickson v. Shalala, 9 F.3d 813, 817-18 (9th Cir. 1993) (citing Varney v. Secretary of HHS, 846 F.2d 581, 585 (9th

1  Cir. 1988) (superseded by statute on other grounds). Under <u>Varney</u>, an ALJ may not reject a
2  claimant's testimony as to subjective limitations of side effects without making specific
3  findings similar to those required for excess pain testimony. <u>Varney</u>, 846 F.2d at 588.
4  Ordinarily, Plaintiff would have the burden of producing medical evidence that her
5  medications impair the ability to work. <u>Miller v. Heckler</u>, 770 F.2d 845, 849 (9th Cir. 1985).
6  Here, however, the burden is on the Commissioner to show medical improvement sufficient
7  for Plaintiff to be able to work.

8        The ALJ's RFC acknowledges that Claimant's medication makes her drowsy and that
9  her concentration is slow. (AR 19.) He acknowledges that she has been fired many times.
10 (AR 20.) A disability report also indicated that Claimant had difficulty concentrating. (AR
11 20.) Yet the ALJ gave little weight to this evidence because "the Medical Expert opinion is
12 more consistent with the record as a whole." (AR 20.)

13       The test for deciding whether to accept a claimant's subjective symptom testimony
14 turns on whether the claimant produces medical evidence of an impairment that reasonably
15 could be expected to produce the pain or other symptoms alleged. <u>Bunnell v. Sullivan</u>, 947
16 F.2d 341, 346 (9th Cir. 1991); <u>see also</u> <u>Reddick v. Chater</u>, 157 F.3d 715, 722 (9th Cir. 1998);
17 <u>Smolen</u>, 80 F.3d at 1281-82 & n.2. The Commissioner may not discredit a claimant's
18 testimony on the severity of symptoms merely because it is unsupported by objective
19 medical evidence. <u>Reddick</u>, 157 F.3d at 722; <u>Bunnell</u>, 947 F.2d at 343, 345. If the ALJ finds
20 the claimant's symptom testimony not credible, the ALJ "must specifically make findings
21 which support this conclusion." <u>Bunnell</u>, 947 F.2d at 345. These findings must be
22 "sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit
23 [the] claimant's testimony." <u>Thomas</u>, 278 F.3d at 958; <u>see also</u> <u>Rollins v. Massanari</u>, 261
24 F.3d 853, 856-57 (9th Cir. 2001); <u>Bunnell</u>, 947 F.2d at 345-46. Unless there is evidence of
25 malingering, the ALJ can reject the claimant's testimony about the severity of her symptoms
26 only by offering "specific, clear and convincing reasons for doing so." <u>Smolen</u>, 80 F.3d at
27 1283-84; <u>see also</u> <u>Reddick</u>, 157 F.3d at 722. The ALJ must identify what testimony is not
28

credible and what evidence discredits the testimony. Reddick, 157 F.3d at 722; Smolen, 80 F.3d at 1284.

In determining Plaintiff's RFC, the ALJ concluded that Claimant's medically determinable impairments could reasonably be expected to produce the alleged symptoms. (AR 20.) The ALJ, however, found that Plaintiff's statements regarding the intensity, persistence and limiting effects of these symptoms were "not credible beginning on December 2, 2007 to the extent they are inconsistent with the above residual functional capacity assessment." (AR 20.) Because the ALJ did not make any finding of malingering, he was required to provide clear and convincing reasons supported by substantial evidence to discount Plaintiff's credibility as to her subjective symptoms, in this case for medication side effects. Smolen, 80 F.3d at 1283-84. The ALJ's proffered reasons are not clear and convincing nor supported by substantial evidence.

As already noted, the ALJ relies heavily on the testimony of the medical expert. (AR 17, 20.) Yet a claimant's testimony on the severity of symptoms cannot be discredited solely because it is unsupported by objective medical evidence. Reddick, 157 F.3d at 722. Additionally, the medical expert on whom the ALJ relies to reject Plaintiff's credibility addressed Plaintiff's psychiatric symptoms, but never addressed her medication side effects. It simply is not true that "the Medical Expert opinion is more consistent with the record" (AR 20) as to Plaintiff's medication side effects or that the RFC is "supported by the Claimant's symptoms, clinical signs and the Medical Expert opinion." (AR 20.) None of the latter factors address Claimant's medication side effects. Again, the ALJ has the burden of demonstrating that Plaintiff's medical improvement enables her to work.

The only other factor cited by the ALJ for discounting Plaintiff's credibility is equally insufficient. The ALJ cites daily activities that he apparently believes are inconsistent with an ability to work:

> Despite the claimant's alleged disability, she cleaned at least weekly. By
> November 2007, the claimant was able to work part time. The claimant

fed and gave water to her cats daily. Even though the claimant is in a lot of pain, just taking her medications relaxes her. She cooks two meals daily for about thirty minutes or longer and does her own laundry. Although she reported she used to go out a lot more, she still went out daily. Although she alleges disability, the claimant drives a car and shops for groceries and clothes. Despite her alleged impairment, the claimant gets together with friends at workshops and makes hand made items and works on the computer. She goes to her mother's house to spend time with her son. Even though the claimant reported trouble getting along with others, she also reported she is doing better with getting along with others. She reported the ability to walk one mile. She followed written instructions well unless there was a lot she did not understand. She is doing a little better handling stress with her medications but still gets stressed (Exhibit 5E). The claimant can independently perform personal care merely by moving slowly (Exhibit 10E). The claimant's mother reported the claimant's psychotropic medications helped the claimant to socialize which she does on the computer two to three times weekly and on the phone with friends and family. Also, the claimant goes to her mother's home about three times per week and to friends' homes occasionally. The claimant's mother reported the claimant could pay attention half an hour (Exhibit 4E).

(AR 20.)

Inconsistent daily activities can be a basis for discounting a claimant's credibility. Orn, 495 F.3d at 639; Burch v. Barnhart, 400 F.3d 676, 680-81 (9th Cir. 2005). Here, however, the evidence does not meet the clear and convincing standard. As already noted, Plaintiff lost her part-time job because of medication side effects, a fact that the ALJ opinion fails to acknowledge. The other activities cited in the ALJ opinion do not address Plaintiff's

medication side effects and are not inconsistent with those alleged effects. Indeed, those activities were cited to demonstrate that Plaintiff's psychiatric impairments are under control. The activities cited do not demonstrate that Plaintiff's medication side effects are not an impediment to work. The medical expert did not address those side effects at all, nor does the ALJ opinion address them explicitly.

The ALJ's reasons for discounting Plaintiff's credibility as to medication side effects are not clear and convincing nor supported by substantial evidence. Claimant suffers from severe psychiatric impairments and was found disabled by the ALJ. The ALJ's RFC is for less than fully sedentary work. The Claimant has never been able to hold a job and was fired from her part-time job. She lost custody of her child in 2008. Neither the medical expert nor the ALJ addressed Plaintiff's alleged medication side effects nor provided clear and convincing reasons for discounting the credibility of Plaintiff and her mother whose statements were rejected only because inconsistent with the medical expert's opinion. In view of the presumption in favor of disability, the ALJ's belief that Plaintiff now can work despite medication side effects that resulted in her being fired from her part-time job is speculative and unwarranted on this record. The ALJ's RFC is not supported by substantial evidence.[2]

## ORDER

IT IS HEREBY ORDERED that the decision of the Commissioner of Social Security is REVERSED and REMANDED for further proceedings in accordance with this Memorandum Opinion and Order and with law.

LET JUDGMENT BE ENTERED ACCORDINGLY.

DATED: November 22, 2011   /s/ John E. McDermott
JOHN E. MCDERMOTT
UNITED STATES MAGISTRATE JUDGE

---

[2] In view of the invalidation of the ALJ's RFC, there is no reason at this time to address the ALJ's finding that Plaintiff can perform past relevant work or other jobs in the national economy.